IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KHALIL EL-AMIN, | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:17-cv-1268 |
| | § | |
| OSCAR FLORES, MEGAN HERRIN, | § | |
| SHERIFF ED GONZALEZ, and | § | |
| HARRIS COUNTY, | § | |
|     Defendants. | § | JURY TRIAL REQUESTED |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **KHALIL EL-AMIN,** Plaintiff, complaining of Defendants **OSCAR FLORES, MEGAN HERRIN, SHERIFF ED GONZALEZ, AND HARRIS COUNTY,** and, for his cause of action, shows the following:

## STATEMENT OF THE CASE

1.     This is an action for damages brought under 42 U.S.C. §1983 against Defendants OSCAR FLORES, MEGAN HERRIN, SHERIFF ED GONZALEZ, AND HARRIS COUNTY. The individual Defendants FLORES and HERRIN were at all relevant times deputies in the Harris County Sheriff's Office. This action is also brought against SHERIFF ED GONZALEZ, in his individual capacity, and HARRIS COUNTY, a governmental entity that is sued as a person under 42 U.S.C. §1983, and whose policies, customs, and practices, including, but not limited to, the failure to properly train, equip, and supervise the individual Defendants FLORES AND HERRIN and/or whose toleration of illegal police conduct, resulted in the use of excessive force upon, the unlawful seizure of, and the injuries inflicted upon Plaintiff KHALIL EL-AMIN.

2.      This is also an action under 42 U.S.C. §1983 against HARRIS COUNTY and/or one or more of the individual Defendants for knowingly bringing, or causing to be brought, baseless criminal charges against Plaintiff KHALIL EL-AMIN, and for knowingly subjecting him to criminal prosecution and processes without probable cause or other legal justification and with malice, thereby constituting a malicious prosecution, and/or for using the legal processes for a wrongful, improper, and perverted purpose, thereby depriving Plaintiff KHALIL EL-AMIN of due process of law and/or constituting an abuse of process.

3.      The Plaintiff seeks monetary damages under 42 U.S.C. § 1983 and state law for the injuries and damages sustained as a result of the Defendants' wrongful conduct. The Plaintiff further seeks attorney's fees and costs and expenses against the Defendants under 42 U.S.C. §1988.

## JURISDICTION AND VENUE

4.      This action is brought pursuant to 42 U.S.C. §1983 and §1988 and the Fourth Amendment to the United States Constitution, made applicable to the Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and 42 U.S.C. §1988. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the incident in question took place in Harris County, Texas, within the United States Southern District of Texas.

## PARTIES

5.      The Plaintiff is a resident of Houston, Harris County, Texas.

6.      The Defendant, Oscar Flores, is being sued in his individual capacity, and was as of January 7, 2017, employed as a deputy sheriff by Harris County, Texas. Upon information and

belief, he may be served with process at his place of employment as a deputy sheriff for Harris County, Texas, at 1200 Baker St., Houston, Texas 77002, or wherever he may be found.

7.      The Defendant, Megan Herrin, is being sued in her individual capacity, and was as of January 7, 2017, employed as a deputy sheriff by Harris County, Texas. Upon information and belief, she may be served with process at her place of employment as a deputy sheriff for Harris County, Texas, at 1200 Baker St., Houston, Texas 77002, or wherever she may be found.

8.      The Defendant, Sheriff Ed Gonzalez, is being sued in his individual capacity, and is Sheriff of Harris County, Texas. He may be served with process at 1200 Baker St., Houston, Texas 77002, or wherever he may be found.

9.      The Defendant, Harris County, is a county organized under the laws of Texas, and may be served with process by serving Harris County Judge Ed Emmett at 1001 Preston, Suite 911, Houston, Texas 77002, or wherever he may be found.

## RELEVANT FACTS TO ALL COUNTS

10.      The Plaintiff is the single father of three sons: A.N., age sixteen, A.E., age fourteen, and A.M., age twelve.

11.      The mother of all sons left them and the Plaintiff when the eldest son, A.N., was only four years old.

12.      On January 7, 2017, the Plaintiff resided at 3443 Addicks Clodine Rd., Apt. #4308, Houston, Texas, with his three sons.

13.      On January 7, 2017, the Plaintiff and A.N. had been arguing over A.N.'s disrespectful response when the Plaintiff expressed his displeasure with A.N.'s excessively long telephone conversations with friends.

14.     During the January 7, 2017, argument, A.N. told the Plaintiff to get out of his face or he was going to call the police. The Plaintiff responded by telling him to go ahead and call the police.

15.     A.N. had a history of calling law enforcement agencies and child protective services about the Plaintiff before January 7, 2017. No law enforcement agency or child protective services had ever found the Plaintiff of any wrongdoing prior to January 7, 2017.

16.     The January 7, 2017 argument with A.N. walking out of the Plaintiff's apartment.

17.     The Plaintiff, A.E., and A.M. remained in the Plaintiff's apartment and began their afternoon prayers.

18.     While the Plaintiff and his younger sons were still engaged in afternoon prayers on January 7, 2017, Defendants Flores and Herrin knocked on the door to the Plaintiff's apartment. When the Plaintiff answered the door, either or both of Defendants Flores and Herrin asked if the Plaintiff was the father of A.N. and asked for the Plaintiff's "story."

19.     The Plaintiff responded that he was A.N.'s father but that he had no story and instead they should ask A.N. because he was the one that called them.

20.     Defendants Flores and/or Herrin asked again for the Plaintiff's story by stating they wanted to hear it from an adult, to which the Plaintiff insisted that he had no story.

21.     Defendants Flores and/or Herrin then demanded that the Plaintiff identify himself. The Plaintiff responded that his name was Khalil El-Amin and he was the father of A.N., A.E. A.M., whom were all standing a few feet away, and that the Defendants, Flores and Herrin, could ask his sons if he was their father.

22.     Defendants Flores and/or Herrin retorted that they needed to verify that he was telling the truth and repeated their demand that the Plaintiff provide them with identification. The Plaintiff

repeated that his name was Khalil El-Amin and that the Defendants could ask his sons who he was.

23.     The Plaintiff stated that he did not need to provide written identification in his own home and asked them to specify which law requires him to produce identification when he is simply standing in his home. The Plaintiff lawfully refused Defendants Flores' and/or Herrin's demand that he produce written identification.

24.     A.E. and A.M. were within earshot of this conversation. A.N. was outside during this conversation.

25.     While the Plaintiff was addressing Defendant Herrin, Defendant Flores walked inside the Plaintiff's apartment and stood behind the Plaintiff.

26.     When the Plaintiff first answered the door, he told Defendants Flores and Herrin that they could come inside the apartment but with the explicit condition that they remove their shoes first. Defendants Flores and Herrin responded by stating that they were not coming inside and that they were not taking their shoes off. When Defendant Flores entered the apartment, it was without the Plaintiff's permission because Defendant Flores had already rejected the Plaintiff's consent to enter the apartment and he had failed to remove his shoes, as was the condition for the consent.

27.     As the Plaintiff was speaking with Defendant Herrin and requesting justification for their demand to produce identification, Defendant Flores suddenly grabbed the Plaintiff's left hand and attempted to aggressively force his hands behind his back while demanding that the Plaintiff put his arms behind his back. In reaction to this sudden use of force, the Plaintiff naturally pulled his arms up and away and demanded to know why he was being forced to put his hands behind his back. He asked what he had done wrong. He asked what Defendants Flores and Herrin were

arresting him for. The Plaintiff did not make contact with Defendant Flores and could not have pushed Defendant Flores with his hands as alleged in the charge of Resisting Arrest, nor could the Plaintiff have pushed Defendant Flores' arm away as alleged in the charge of Interference With Public Duties because Defendant Flores was positioned behind the Plaintiff making it physically impossible to do so.

28.     Defendants Flores and Herrin did not answer the Plaintiff's questions as to why he was being arrested and repeated their demand for the Plaintiff to put his hands behind his back. In response, the Plaintiff repeated his questions, which Defendants Flores and Herrin continued to ignore.

29.     Defendant Herrin then shouted, "Tase him, tase him." She gave no reason for why the Plaintiff should be tased.

30.     Defendant Flores then tased the Plaintiff in the back. Neither Defendant Flores, nor Defendant Herrin, gave the Plaintiff any warning that he was going to be tased or possibly could be tased.

31.     Neither Defendant Flores, nor Defendant Herrin, told the Plaintiff before he was tased that he was being detained, that they wished to search him and/or his apartment, that he was getting in the way of an investigation, or that he was under arrest. Neither Defendant Flores, nor Defendant Herrin, read the Plaintiff his Miranda rights before he was tased. Neither Defendant Flores, nor Defendant Herrin, asked the Plaintiff if he had a weapon, asked to pat down the Plaintiff for weapons, or attempted to pat down the Plaintiff for weapons before he was tased.

32.     When the Plaintiff was tased, he collapsed forward as his face bounced off a wall before hitting the concrete floor near the doorway. Defendant Herrin then leaped on to the Plaintiff and

dug her knee into the disoriented Plaintiff's spine causing him intense pain. She grabbed the Plaintiff's right arm and attempted to put the Plaintiff's left arm behind his back.

33.     Witnessing these events unfold, Plaintiff's youngest son A.M. became visibly upset at Defendant Flores and Herrin to which the Plaintiff told A.M. to calm down and not worry. Defendant Herrin then ordered the Plaintiff to not move. The Plaintiff responded that he was not moving. Defendant Herrin repeated her command to the Plaintiff to not move while applying even more force into the Plaintiff's spine and then instructed Defendant Flores to, "Tase him again." A.M. continued pleading with Defendants Flores and Herrin to stop and to not do this to his dad, that they should leave his dad alone.

34.     Defendant Flores then tased the Plaintiff for a second time.

35.     The taser shots, which seemed to have lasted approximately 8 to 10 seconds each, caused the Plaintiff severe physical pain, as well as, lasting emotional trauma.

36.     The force that Defendants Flores and Herrin used against the Plaintiff was unnecessary and unreasonable.

37.     Defendant Herrin failed to intervene to prevent the unconstitutional use of excessive force against the Plaintiff. To the contrary, Defendant Herrin twice instructed Defendant Flores to tase the Plaintiff.

38.     Similarly, Defendant Flores failed to intervene to prevent the unconstitutional use of excessive force against the Plaintiff by Defendant Herrin. To the contrary, Defendant Flores followed every command to use excessive force by Defendant Herrin without hesitation.

39.     A.E. and A.M. stood a few feet away helpless as they watched and listened to their father being assaulted and tased.

40.     After the second taser shot, Defendant Herrin was able to handcuff the Plaintiff after which Defendant Flores aggressively pulled the Plaintiff up by his shoulder causing a lot of pain. As Defendant Flores started taking the Plaintiff down the stairs from the third floor apartment to the patrol vehicle the Plaintiff asked if he could put on a pair of shoes before leaving, but Defendant Flores did not respond. Defendant Flores began to forcefully drag the Plaintiff down the steps to which the Plaintiff asked why Defendant Flores would not simply just let him get his balance and walk down the stairs. Defendant Flores did not respond.

41.     Many of the Plaintiff's neighbors and friends, many who he and his sons interact with on a daily or regular basis, witnessed him being aggressively dragged down the stairs and treated in such an hostile manner by law enforcement as if they had just apprehended a serious criminal.

42.     The Plaintiff was then put into Defendant Flores' patrol vehicle. While the Plaintiff was sitting in the vehicle, Defendant Herrin could be overheard expressing to Defendant Flores how she had a difficult time putting the Plaintiff's hands together behind his back because of how broad his shoulders were. This statement clearly indicates that the real reason for her difficulty in handcuffing the Plaintiff was not due to the Plaintiff resisting or moving; rather, it was because of the Plaintiff's body structure.

43.     At all times while he was in the presence of Defendants Flores and Herrin on January 7, 2017, the Plaintiff was acting in a legal fashion. At no time did Defendants Flores or Herrin witness the Plaintiff engage in any illegal conduct on January 7, 2017, before he was tased.

44.     At no time while in the presence of Defendants Flores and Herrin on January 7, 2017, did the Plaintiff make any sudden or quick movements or gestures that could have been interpreted by Defendants Flores or Herrin as aggressive or threatening.

45.     Standing at only 5 feet 5 inches tall, the Plaintiff does not have an imposing figure and at no time while in the presence of Defendants Flores and Herrin on January 7, 2017, did the Plaintiff say or do anything that would have caused Defendants Flores or Herrin to fear imminent bodily harm.

46.     At no time while in the presence of Defendants Flores and Herrin on January 7, 2017, did the Plaintiff say or do anything that would have caused Defendants Flores or Herrin to fear that the Plaintiff possessed a weapon. Defendants Flores and Herrin had no reason to believe that the Plaintiff posed a danger to himself or to any other person while he was in their presence on January 7, 2017.

47.     On January 7, 2017, the Plaintiff was charged with Resisting Arrest, but was not charged with the commission of any other crime at that time. The Complaint charged that the Plaintiff, on January 7, 2017, "did then and there unlawfully intentionally OBSTRUCT a person he knows is a PEACE OFFICER from affecting AN ARREST of KHALIL BASSAM EL AMIN by using force against O. Flores, namely BY PUSHING O. FLORES WITH HIS HAND."

48.     The arrest that was the subject of the above-referenced Complaint was an unlawful seizure of the Plaintiff's person. There was no legal cause for said arrest. Neither Defendant Flores, nor Defendant Herrin, advised the Plaintiff prior to said arrest that he was under arrest. Neither Defendant Flores, nor Defendant Herrin, had any intent to arrest the Plaintiff as of the time that Defendant Flores tased the Plaintiff.

49.     The Plaintiff was then prosecuted for the offense of Resisting Arrest under Cause No. 2130355 in the Harris County Criminal Court No. 13.

50.     This required Plaintiff to suffer the anxiety and strain of being incarcerated and subjected to a criminal prosecution.

51.     The Plaintiff remained incarcerated overnight between January 7-8, 2017, but, by an Order titled "Probable Cause For Further Detention & Statutory Warnings By Magistrate" dated January 8, 2017, the Harris County Criminal Court No. 13 found that probable cause did not exist for the resisting arrest charge. The Court further ordered that the Plaintiff be released from custody immediately.

52.     After the No Probable Cause Order was issued and the Plaintiff was freed, the Harris County District Attorney's Office suddenly, by Complaints dated January 10, 2017, filed two additional charges against the Plaintiff: Assault-Family Member, relating to the Plaintiff's alleged altercation with his son, A.N., on January 7, 2017, and Interference with Public Duties, in which it alleged the Plaintiff pushed Defendant Flores' arm away on January 7, 2017.

53.     The Plaintiff's assault by Defendants Flores and Herrin, his tasings, and his arrest in front of his children, and then being dragged out of his apartment and down the stairs in front of his neighbors and friends for lawfully refusing to provide written identification has caused him substantial ongoing physical pain, humiliation, embarrassment and stigmatization.

54.     Further, the actions of Defendants Flores and Herrin and the Plaintiff's wrongful arrest directly led to the arrest of A.E. and A.M. for charges related to their alleged reaction towards A.N. after witnessing what happened to their father.

55.     The Plaintiff has at all times worked extremely hard to provide for his sons and to keep them out of trouble. Neither he, nor any of his three sons had a criminal record or had even been charged with any crimes or juvenile offenses prior to January 7, 2017. Now, as a direct and proximate result of the unlawful and unconstitutional actions of Defendants, the Plaintiff's sons have been exposed to the criminal justice system and have experienced everything that the

Plaintiff has tried to protect them from. This has caused the Plaintiff further mental pain and anguish, humiliation, and embarrassment.

56.    Defendant Flores' tasing of the Plaintiff was incident to, at most, an investigatory detention, and was not incident to an arrest or a search.

57.    The Defendant Harris County had, as of January 7, 2017, a Use of Force policy for the Harris County Sheriff's Office, but its Use of Force policy current on January 7, 2017, did not address use of force incident to investigative detentions.

58.    The Defendant Harris County nor Defendant Sheriff Ed Gonzalez trained Defendants Flores and Herrin, as of January 7, 2017, in the proper use of force to be used in investigative detentions.

## COUNT I

### (Khalil El-Amin v. Oscar Flores – 42 U.S.C. §1983, use of excessive force)

59.    The Plaintiff reiterates the allegations set forth in paragraphs 1 through 58 above as if fully set forth herein.

60.    On January 7, 2017, Defendant Flores acted under the color of law while he was at the Plaintiff's residence.

61.    Force is excessive, and therefore violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing a peace officer.

62.    At no time while at the Plaintiff's residence on January 7, 2017, did Defendant Flores have any reason to believe that the Plaintiff was armed or dangerous.

63.    On January 7, 2017, Defendant Flores violated the Plaintiff's right to be free from the unreasonable seizure of his person and from the use of excessive force during an investigative

detention under the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Flores's violation of said right violated 42 U.S.C.§1983.

64.     Defendant Flores, acting under color of law and within the scope of his employment with the Harris County Sheriff's Office, intentionally, and with conscious, callous, deliberate and unreasonable indifference, deprived the Plaintiff of his constitutional rights.

65.     Defendant Flores's multiple tasings of the Plaintiff on January 7, 2017, were unreasonable and excessive force, and violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and violated 42 U.S.C. §1983.

66.     Defendant Flores's multiple tasings of the Plaintiff on January 7, 2017, demonstrated a deliberate indifference to and conscious disregard for the constitutional rights and safety of the Plaintiff.

67.     Defendant Flores's failure to assess the relevant circumstances before tasing the Plaintiff was objectively unreasonable and violated the Use of Force policy of the Harris County Sheriff's Office.

68.     Defendant Flores' multiple tasings of the Plaintiff did not relate to a proper or conscious assessment of danger.

69.     Defendant Flores failed to respond to the Plaintiff's behavior proportionately. His multiple tasings of the Plaintiff were objectively unreasonable and unconstitutional.

70.     Because the Plaintiff never presented any danger to himself, others, or the Defendants Flores and/or Herrin, the tasing of the Plaintiff was excessive to the circumstances and unnecessary.

71.     As a direct and proximate result of Defendant Flores's multiple tasings of the Plaintiff, the Plaintiff suffered substantial injuries, including, but not limited to, physical injury, conscious

pain and suffering, mental anguish, humiliation, embarrassment, stigmatization, a violation of his constitutional rights, and other damages.

WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from Defendant Flores, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## COUNT II

**(Khalil El-Amin v. Megan Herrin – 42 U.S.C. §1983, use of excessive force)**

72.     The Plaintiff reiterates the allegations set forth in paragraphs 1 through 71 above as if fully set forth herein.

73.     Force is excessive, and therefore violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing a peace officer.

74.     Defendant Flores used excessive force in tasing the Plaintiff on January 7, 2017. Each of the two tasings constituted excessive force.

75.     Defendant Herrin directed Defendant Flores to tase the Plaintiff both times. Defendant Herrin's deliberate actions in directing Defendant Flores to tase the Plaintiff constituted a use of excessive force by Defendant Herrin against the Plaintiff.

76.     On January 7, 2017, Defendant Herrin acted under the color of law while she was at the Plaintiff's residence.

77.     At no time while at the Plaintiff's residence on January 7, 2017, did Defendant Herrin have any reason to believe that the Plaintiff was armed or dangerous.

78.     On January 7, 2017, Defendant Herrin violated the Plaintiff's right to be free from the unreasonable seizure of his person and from the use of excessive force during an investigative

detention under the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Herrin's violation of said right violated 42 U.S.C.§1983.

79.    Defendant Herrin, acting under color of law and within the scope of her employment with the Harris County Sheriff's Office, intentionally, and with conscious, callous, deliberate and unreasonable indifference, deprived the Plaintiff of his constitutional rights.

80.    Defendant Herrin's directives to Defendant Flores to tase the Plaintiff on January 7, 2017, were unreasonable and excessive force, and violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and violated 42 U.S.C. §1983.

81.    Defendant Herrin's directives to Defendant Flores to tase the Plaintiff on January 7, 2017, demonstrated a deliberate indifference to and conscious disregard for the constitutional rights and safety of the Plaintiff.

82.    Defendant Herrin's failure to assess the relevant circumstances before directing Defendant Flores to tase the Plaintiff was objectively unreasonable and violated the Use of Force policy of the Harris County Sheriff's Office.

83.    Defendant Herrin's direction to Defendant Flores to tase the Plaintiff did not relate to a proper or conscious assessment of danger.

84.    Defendant Herrin failed to respond to the Plaintiff's behavior proportionately. Her orders to Defendant Flores to tase the Plaintiff were objectively unreasonable and unconstitutional.

85.    Because the Plaintiff never presented any danger to himself, others, or the Defendants Flores and/or Herrin, the tasing of the Plaintiff was excessive to the circumstances and unnecessary.

86.    As a direct and proximate result of Defendant Herrin's directives to Defendant Flores to tase the Plaintiff, the Plaintiff suffered substantial injuries, including, but not limited to, physical

injury, conscious pain and suffering, mental anguish, humiliation, embarrassment, a violation of his constitutional rights, and other damages.

WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from Defendant Herrin, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## COUNT III

**(Khalil El-Amin v. Oscar Flores and Megan Herrin – 42 U.S.C. §1983, false arrest)**

87.     The Plaintiff reiterates the allegations set forth in paragraphs 1 through 86 above as if fully set forth herein.

88.     On January 7, 2017, Defendants Flores and Herrin willfully detained and arrested the Plaintiff without a warrant.

89.     Defendant Flores' and Herrin's arrest of the Plaintiff was against the Plaintiff's consent and without authority of law. Defendants Flores and Herrin had no legal authority or justification for the Plaintiff's arrest.

90.     Defendants Flores and Herrin had no probable cause to arrest the Plaintiff for Resisting Arrest in that the facts and circumstances within Defendants Flores's and Herrin's knowledge at the time of the arrest, and of which they had reasonably trustworthy information, were insufficient to warrant a person of reasonable caution to believe that the Plaintiff committed the offense of Resisting Arrest as supported by the courts dismissal of the Resisting Arrest charge for lack of probable cause the very next day.

91.     Defendant Flores' and Herrin's arrest of the Plaintiff on January 7, 2017, violated the Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from arrests that were not made with probable cause.

92.     As a direct and proximate result of Defendant Flores' and Herrin's false arrest of the Plaintiff, the Plaintiff suffered substantial injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, embarrassment, stigmatization, a violation of his constitutional rights, and other damages.

WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from Defendants Flores and Herrin, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## COUNT IV

### (Khalil El-Amin v. Sheriff Ed Gonzalez and Harris County – 42 U.S.C. §1983, failure to train)

93.     The Plaintiff reiterates the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94.     Defendant Gonzalez and Defendant Harris County implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, of allowing employees of the Harris County Sheriff's Office to us excessive force on unsuspecting, law abiding and non-threatening individual citizens without any reasonable justification for the use of excessive force where less severe alternatives existed. The failure of Defendant Gonzalez, in his capacity as Harris County Sheriff, and Defendant Harris County to adequately train and supervise Defendants Flores and Herrin amounts to deliberate indifference to the rights of the Plaintiff to be free from excessive force and unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution. As a result of this deliberate indifference to the Plaintiff's rights, the Plaintiff suffered personal injuries and is entitled to relief under 42 U.S.C. §1983.

95.     The Defendants, Gonzalez and Harris County, had a constitutional duty to supervise and/or train their deputies and protect the Plaintiff from their deputies' wrongful acts and omissions, unconstitutional use of force, and illegal and unreasonable seizures. Defendants Gonzalez and Harris County failed to properly supervise their deputies such as Defendants Flores and Herrin. This failure to supervise was deliberately indifferent to the Plaintiff's constitutional rights because proper training and/or supervision would ensure that the Plaintiff would be free from unlawful seizure of his person and would be safe and secure from undue, unreasonable, and excessive force.

96.     Defendant Flores' and Defendant Herrin's actions at the Plaintiff's residence on January 7, 2017, were done pursuant to the written and de facto supervisory and law enforcement policies, practices and/or customs of Defendants Gonzalez and Harris County.

97.     Defendants Gonzalez and Harris County had a written policy regarding the use of force by the Harris County Sheriff's Office employees as of January 7, 2017.

98.     The Harris County Sheriff's Office's written use of force policy in effect as of January 7, 2017, was unconstitutional in that it failed to provide for:

   a.     Proper use of a taser by Harris County Sheriff's Office deputies;

   b.     proper use of force by Harris County Sheriff's Office deputies during investigatory detentions; and

   c.     the proper method for Harris County Sheriff's Office deputies to implement investigatory detentions.

99.     The actions and omissions of Defendant Flores' and Herrin's supervisors constituted supervisory encouragement of the use of excessive force. This grossly inadequate supervision was caused by the deliberate indifference of Defendants Gonzalez and Harris County to the

rights of individuals with whom their deputies would come into contact, such as the Plaintiff, not be subjected to constitutional deprivations.

100.    The constitutionally flawed supervision of Defendants Flores and Herrin by Defendants Gonzalez and Harris County deprived the Plaintiff of his constitutional rights and proximately caused the Plaintiff's injuries.

101.    Defendants Gonzalez's and Harris County's improper and inadequate training of their deputies with regard to detention, proper use of weapons, proper use of force, proper interrogation and arrest procedures, and the use of excessive force amounts to deliberate indifference toward the Plaintiff's constitutional rights and was the moving force behind Defendant Gonzalez's and Harris County's deprivation of the Plaintiff's constitutional rights.

102.    Defendants Gonzalez and Harris County failed to train and/or supervise their deputies to handle a recurring situation with obvious potential for a constitutional violation. Defendants Gonzalez and Harris County knew that there would be recurring situations involving the need for their deputies to perform investigatory detentions, with the potential for the need to use force during such investigatory detentions, but they failed to train their deputies to handle such situations, which was the direct and proximate cause of the Plaintiff's injuries.

103.    Further, Defendants Gonzalez and Harris County knew the potential for constitutional violations with respect to lack of training in tasers and appropriate use of force. Yet Defendants Gonzalez and Harris County failed to train their deputies with respect to the appropriate use of tasers in citizen encounters such as investigatory detentions.

104.    As a direct and proximate result of the above-referenced failures of Defendants Gonzalez and Harris County, the Plaintiff suffered substantial injuries, including, but not limited to,

physical injury, conscious pain and suffering, mental anguish, humiliation, embarrassment, stigmatization, a violation of his constitutional rights, and other damages.

WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from Defendants Gonzalez and Harris County, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## COUNT V

**(Khalil El-Amin v. Oscar Flores, Megan Herrin, Sheriff Ed Gonzalez, and Harris County – 42 U.S.C. §1983, malicious prosecution)**

105.    The Plaintiff reiterates the allegations set forth in paragraphs 1 through 104 above as if fully set forth herein.

106.    The Plaintiff's arrest on January 7, 2017, was a false arrest.

107.    As a direct and proximate result of his false arrest, the Defendants charged the Plaintiff with Resisting Arrest.

108.    The Plaintiff was innocent of Resisting Arrest on January 7, 2017.

109.    The Defendants knew that they had no probable cause to charge the Plaintiff with Resisting Arrest with respect to his actions on January 7, 2017.

110.    The Defendants provided the Harris County District Attorney with information regarding the incident that led to the Plaintiff's arrest on January 7, 2017, that they knew was false.

111.    As a direct and proximate result of said false information regarding the Plaintiff's arrest, the Harris County District Attorney's Office filed a Complaint against the Plaintiff for Resisting Arrest. But for such false information, the Harris County District Attorney's Office would not have filed said Complaint against the Plaintiff.

112.    As a direct and proximate result of being charged with Resisting Arrest, the Plaintiff was incarcerated on January 7, 2017, and remained in jail overnight until he was released by Order of

the Harris County Criminal Court No. 13 dated January 8, 2017, on the grounds that probable cause did not exist for the resisting arrest charge.

113.   The Plaintiff's incarceration from January 7-8, 2017, incident to his false arrest violated his rights to be free from unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

114.   By Order of the Harris County Criminal Court No. 13 dated January 12, 2017, the Complaint for Resisting Arrest against the Plaintiff was dismissed for lack of probable cause. Said prosecution thus terminated in favor of the Plaintiff.

115.   The Defendants knowingly, maliciously, wantonly, intentionally, and with gross disregard for the rights of the Plaintiff instigated the prosecution of the Plaintiff for Resisting Arrest.

116.   The Plaintiff's incarceration from January 7-8, 2017, was incident to the Defendants' instigation of the prosecution of the Plaintiff for Resisting Arrest.

117.   The Plaintiff's incarceration from January 7-8, 2017, was incident to the Defendants' malicious prosecution of the Plaintiff for Resisting Arrest.

118.   The Plaintiff's incarceration from January 7-8, 2017, violated his rights to be free from unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution and violated 42 U.S.C. §1983.

119.   As a direct and proximate result of the acts of the Defendants, the Plaintiff suffered substantial injuries, including, but not limited to, physical pain and suffering, mental anguish, humiliation, embarrassment, stigmatization, a violation of his constitutional rights, and other damages.

WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from all Defendants, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## COUNT VI

**(Khalil El-Amin v. Oscar Flores and Megan Herrin – 42 U.S.C. §1983, conspiracy to subject the Plaintiff to false arrest)**

120.    The Plaintiff reiterates the allegations set forth in paragraphs 1 through 58 and 87 through 92 above as if fully set forth herein.

121.    The Defendants Flores and Herrin communicated, acted, and conspired with each other with the shared intention to deprive the Plaintiff of his liberty and to subject the Plaintiff to a false arrest on January 7, 2017.

122.    As a direct and proximate result of the acts of the Defendants Flores and Herrin, the Plaintiff suffered substantial injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, embarrassment, stigmatization, a violation of his constitutional rights, and other damages.

WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from Defendant Flores and Herrin, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## COUNT VII

**(Khalil El-Amin v. Oscar Flores, Megan Herrin, Sheriff Ed Gonzalez, and Harris County – 42 U.S.C. §1983, conspiracy to subject the Plaintiff to malicious prosecution)**

123.    The Plaintiff reiterates the allegations set forth in paragraphs 1 through 58 and 105 through 119 above as if fully set forth herein.

124.     All of the named Defendants communicated, acted, and conspired with each other with the shared intention to deprive the Plaintiff of his liberty and to subject the Plaintiff to a malicious prosecution for Resisting Arrest.

125.     As a direct and proximate result of the acts of the named Defendants, the Plaintiff suffered substantial injuries, including, but not limited to, conscious pain and suffering, mental anguish, humiliation, embarrassment, stigmatization, a violation of his constitutional rights, and other damages.

126.     WHEREFORE, the Plaintiff seeks actual, compensatory, and punitive damages from all Defendants, as well as an award of reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988, with interest.

## DAMAGES

127.     Defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of ordering, encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above described acts and/or omissions.

128.     The Plaintiff suffered compensatory, special, and punitive damages for the following:

a.   Extreme physical abuse, mental anguish and emotional distress as a result of being falsely arrested, physically assaulted, and battered by Defendant Herrin and Defendant Flores;

b.   Violations of Plaintiffs' civil rights by Defendants Herrin, Flores, Harris County Sheriff Ed Gonzales, and Harris County.

## PUNITIVE DAMAGES

129.     Plaintiff is also seeking punitive damages for the egregious acts and omissions of Defendants Herrin, Flores, Sheriff Ed Gonzales, and Harris County.

## JURY DEMAND

130.    Plaintiff requests that this action be heard before a jury.

## CONCLUSION AND PRAYER

For all the foregoing reasons, the Plaintiff prays for judgment against all Defendants jointly, severally and in solido, as follows:

a.   Compensatory, special and punitive damages;

b.   the cost of this action and reasonable attorneys fees as provided by 42 U.S.C. §1988;

c.   pre-judgment and post-judgment interest;

d.   trial by jury; and

e.   such further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ M. Obaid Shariff_____
M. Obaid Shariff, Esq.
Texas Bar No. 24091135
THE SHARIFF LAW FIRM, PLLC.
4734 West Alabama St., Suite 201
Houston, Texas 77027
713-448-0505 (phone)
832-582-3611 (fax)
mshariff@sharifflawfirm.com

ATTORNEY FOR PLAINTIFF

Dated: April 14, 2017