United States District Court
Southern District of Texas

**ENTERED**

December 19, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KHALIL EL-AMIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1268 |
| | § | |
| OSCAR FLORES, MEGAN HERRIN, | § | |
| SHERIFF ED GONZALEZ, and | § | |
| HARRIS COUNTY, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM AND ORDER</u>

Pending are Defendants Oscar Flores and Megan Herrin's Motion for Summary Judgment (Document No. 31), Defendant Harris County Sheriff Ed Gonzalez's Motion for Summary Judgment (Document No. 32), and Defendant Harris County's Motion for Summary Judgment (Document No. 33).[1]  After carefully considering the motions, responses, replies, and applicable law, the Court concludes as follows.

I. <u>Background</u>

This case arises from the January 7, 2017 tasing and arrest of Plaintiff Khalil El-Amin ("Plaintiff").  The parties offer conflicting evidence regarding many aspects of what transpired, and

---

[1] Defendants' replies in support of their respective motions for summary judgment also each include motions to strike, which are addressed in connection with Defendants' evidentiary objections below.  Document Nos. 43, 46, 49.

the Court for purposes of this motion accepts as true Plaintiff's evidence and draws all inferences in Plaintiff's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986) (on summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff is an African-American man and a practicing Muslim who in January 2017 lived in an apartment in Houston with his three sons, then aged sixteen, fourteen, and twelve.[2]  On the afternoon of January 7, 2017, Defendant Oscar Flores, a Deputy with the Harris County Sheriff's Office, was dispatched to Plaintiff's apartment in response to a family disturbance call made by Plaintiff's eldest son, Abdul Rahman El-Amin ("Abdul").[3]  Deputy Flores arrived at the apartment and knocked on the door, but there was no answer.[4]  Plaintiff was inside praying with his two younger sons when they "heard loud aggressive banging at the door," but Plaintiff waited to answer the door until after he finished praying.[5]  Meanwhile, Defendant Megan Herrin, also a Deputy

─────────────

[2] Document No. 38, ex. 1 ¶¶ 2, 6 (Pl.'s Aff.).

[3] Document No. 31, ex. 1 ¶¶ 3-5 (Aff. of Deputy Flores).

[4] <u>Id.</u>, ex. 1 ¶ 3.

[5] Document No. 38, ex. 1 ¶¶ 7-8; *accord* <u>id.</u>, ex. 2 ¶ 4 (Decl. of Pl.'s middle son) (knocking "progressively got angrier and angrier as we prayed and started to scare me"); <u>id.</u>, ex. 3 ¶ 4 (Decl. of Pl.'s youngest son) ("While we were praying there was suddenly a loud banging at our door that got louder and louder and started to scare me.").

2

Sheriff, arrived to assist as a backup officer.[6]  (Deputy Sheriffs Flores and Herrin together are referred to as the "Deputies.")

After the Deputies had been knocking on the door for several minutes, Plaintiff's eldest son, Abdul, approached them from the south stairs and identified himself to the officers.[7]  Abdul told the Deputies that he had been talking on the telephone for several hours with a friend; that Plaintiff had asked Abdul who he was talking with; that Abdul responded that he was talking to his friend; that Plaintiff asked Abdul if he was gay; that Abdul did not wish to argue with his father and agreed; that Plaintiff got angry and asked him "if he liked it when someone plays with his 'butt'"; that Abdul again agreed; that Plaintiff pushed Abdul into the wall inside the apartment and attempted to take Abdul's cell phone; that Plaintiff took away Abdul's cell phone and earphones, threw them on the floor, and kicked Abdul out of the apartment; that Abdul picked up his telephone on the way out of the apartment to contact the Sheriff's Office; and that Plaintiff had locked Abdul out of the apartment and was still inside with Abdul's two brothers.[8]  Deputy Flores and Deputy Herrin continued to knock

---

[6] Document No. 31, ex. 1 ¶ 3; id., ex. 2 ¶ 3 (Decl. of Deputy Herrin).

[7] Id., ex. 1 ¶ 3; id., ex. 2 ¶ 3.  Plaintiff's apartment was on the third floor of the building.  Id., ex. 1 ¶ 3.

[8] Id., ex. 1 ¶¶ 4-5; id., ex. 2 ¶ 4.

intermittently on the apartment door for a total of ten to fifteen minutes and announced their presence.[9]

When he had finished praying, Plaintiff answered the door and saw the Deputies, whom he recognized as law enforcement officers.[10] The Deputies "seemed to be extremely upset that [Plaintiff] had not immediately answered the door."[11]  Plaintiff asked the Deputies how they were doing and invited them to come inside on the condition that they would have to remove their shoes, which the officers stated they would not do.[12]  Plaintiff was wearing sweat pants and initially had his hands in his pockets, and when the officers asked him to remove his hands, Plaintiff immediately complied and kept his hands in the officers' view.[13]   Deputy Herrin questioned Plaintiff about what had happened and Plaintiff stated that he didn't have a story and they could ask Abdul, who was standing outside the apartment.[14]  Plaintiff identified himself by name and as Abdul's father, but when the Deputies then demanded to see his

---

[9] Id., ex. 1 ¶ 6; id., ex. 2 ¶ 5.

[10] Document No. 38, ex. 1 ¶ 8.

[11] Id., ex. 2 ¶ 5; id., ex. 3 ¶ 5.

[12] Id., ex. 1 ¶ 9.

[13] Id., ex. 38 ¶ 10.   The Deputies testify that Plaintiff initially refused to take his hands out of his pockets but eventually complied after multiple commands.  Document No. 31, ex. 1 ¶ 6; id., ex. 2 ¶ 6.

[14] Document No. 38, ex. 1 ¶¶ 11-12; Document No. 31, ex. 1 ¶ 7.

4

identification, Plaintiff asked them why they needed his identification and what law required him to provide it while he was in his own home.[15]  Plaintiff's youngest son, who was watching from inside the apartment, testifies that the officers were "aggressive," spoke "violently" to Plaintiff, and "screamed" at Plaintiff, while Plaintiff responded "calmly," "peacefully," and "collectedly."[16]  Plaintiff's middle son also characterizes the officers' repeated requests for identification as "rude[]" and testifies that "my father was calm" and the officers "were being aggressive."[17]

While Plaintiff was speaking with Deputy Herrin, Deputy Flores walked around Plaintiff into the apartment without Plaintiff's permission.[18]  Without giving Plaintiff a warning, Deputy Flores reached for Plaintiff's left forearm to detain him, and Plaintiff "suddenly felt [his] wrist being violently grabbed and was suddenly jerked."[19]  Plaintiff pulled his arm away and asked what Deputy

---

[15] Document No. 38, ex. 1 ¶¶ 13-17.

[16] <u>Id.</u>, ex. 3 ¶¶ 6-8.

[17] <u>Id.</u>, ex. 2 ¶¶ 7, 14.  Deputy Flores, in turn, describes Plaintiff as "uncooperative" in response to Deputy Flores's questioning.  Document No. 31, ex. 1 ¶ 7.

[18] Document No. 38, ex. 1 ¶ 18.  Plaintiff's youngest son testifies that he saw "the male officer walk behind my father into our home as the female officer distracted my father with her violent yelling and temper tantrum."  <u>Id.</u>, ex. 3 ¶ 9.

[19] <u>Id.</u>, ex. 1 ¶ 20; <u>id.</u>, ex. 4 at 10 (Deputy Flores admits that he gave no warning to Plaintiff that he was reaching for Plaintiff's left forearm).

Flores was doing.[20]   Both Deputies simultaneously instructed Plaintiff to turn around while he was standing between them, and immediately thereafter, Deputy Herrin told Deputy Flores to "Tase him.   Tase him."[21]   Deputy Flores pushed Plaintiff forward and discharged his Taser into Plaintiff's back.[22]   Both Taser probes stuck in Plaintiff's back and the Taser completed a standard five-second electrical cycle, causing Plaintiff to experience neuro-muscular incapacitation and fall forward to the ground, halfway out the door.[23]   Plaintiff's head hit both the wall and the concrete floor as he fell, and Plaintiff may have briefly lost consciousness.[24]   Deputy Flores admits that he did not give Plaintiff a verbal warning that he could be tased.[25]

---

[20] Id., ex. 1 ¶¶ 21, 23.   Deputy Flores testifies that he advised Plaintiff that he was being detained and "reached for Mr. El-Amin's left forearm to detain him and Mr. El-Amin pushed [Deputy Flores's] arm back forcefully, avoiding detention."   Document No. 31, ex. 1 ¶ 8.   Plaintiff denies that either officer told him he was being detained or that he pushed Deputy Flores.   Document No. 38, ex. 1 ¶¶ 22-23.

[21] Document No. 38, ex. 1 ¶¶ 22-25.   Deputy Herrin denies that she told Deputy Flores to use his Taser the first time.   Id., ex. 5 at 12.

[22] Document No. 31, ex. 1 ¶ 9.   The Taser is also sometimes referred to in the record as a Conducted Electrical Weapon, or CEW.

[23] Document No. 31, ex. 1 ¶¶ 9-10, 16; Document No. 38, ex. 1 ¶ 28; id., ex. 4 at 14.

[24] Document No. 38, ex. 1 ¶¶ 28-29; id., ex. 3 ¶¶ 14-16.

[25] Id., ex. 4 at 13.

Plaintiff was next aware of "feeling an enormous amount of pain while Officer Herrin violently drove her knee deep into [his] back" while attempting to handcuff him.[26]   Deputy Herrin grabbed Plaintiff's right wrist and arm and instructed him to be still, to which Plaintiff responded, "I'm not moving.   I'm not moving."[27] Plaintiff also stated, "I'm not resisting," and told his sons, "It's going to be okay kids, keep calm."[28]   While Plaintiff was on the ground with Deputy Herrin's knee in his back, not resisting, Deputy Herrin continued to have trouble getting the handcuffs on Plaintiff and she suddenly told Deputy Flores to "Tase him again."[29] Deputy Flores cycled his Taser for another five seconds, after which Deputy Herrin successfully handcuffed Plaintiff.[30]   Deputy

---

[26] Id., ex. 1 ¶ 29.

[27] Id., ex. 1 ¶ 32.

[28] Id., ex. 3 ¶ 16.

[29] Id., ex. 1 ¶¶ 34-35; id., ex. 2 ¶¶ 15, 18; id., ex. 3 ¶¶ 12, 16.   The Deputies testify that Plaintiff physically resisted by tightening his arms to prevent Deputy Herrin from putting on the handcuffs.  Document No. 31, ex. 1 ¶ 16; id., ex. 2 ¶ 9.  Plaintiff testifies that he "later heard Officer Herrin commenting to another officer on the broadness of my shoulders and that being the real reason why it was difficult for her to put my hands together behind my back."  Document No. 38, ex. 1 ¶¶ 31, 39.  Deputy Herrin admits that she commented to another officer that Plaintiff had broad shoulders.  Id., ex. 5 at 14.

[30] Document No. 31, ex. 1 ¶ 16; Document No. 38, ex. 1 ¶ 35; id., ex. 4 at 15-16.

Flores then grabbed Plaintiff by the arm, dragged him downstairs, and put him in the back of a patrol car.[31]

After Plaintiff was examined and medically cleared by medical personnel, Deputy Flores called the Harris County District Attorney's Office and spoke with Assistant District Attorney DeAngelo, who accepted a charge of resisting arrest against Plaintiff.[32] Deputy Herrin was not involved in that call, made no representations to the District Attorney's Office about the incident, and did not speak to Deputy Flores about a charge being filed against Plaintiff.[33] Deputy Flores also reported his use of a Taser to his supervisor, Sergeant Larson, who responded to the scene and was briefed by Deputy Flores.[34] Deputy Flores then took Plaintiff to jail where he was charged with resisting arrest.[35]

---

[31] Document No. 38, ex. 1 ¶¶ 37-38.

[32] Document No. 31, ex. 1 ¶¶ 18-19. *See also* id., ex. 3 ¶ 21 (In Harris County, "peace officers simply do not affect arrests and transport their prisoners to the local jail for booking. Prior to committing a prisoner to the Harris County Jail system for a class 'B' or higher charge, the arresting officer must first call the Intake Division of the Harris County District Attorney's Office. An HCDAO ID assistant district attorney discusses the facts of the arrest with the officer then tells the officer 'if' (s)he will 'accept' the charge and, if so, what charge the HCDAO will accept.").

[33] Id., ex. 1 ¶ 19; id., ex. 2 ¶ 17.

[34] Id., ex. 1 ¶ 20. Deputy Flores and Sergeant Larson completed a Use of Force report, which included photographs of Plaintiff's back. Id., ex. 1 ¶ 24.

[35] Id., ex. 23; Document No. 38, ex. 1 ¶ 40.

Meanwhile, after Deputy Flores took Plaintiff into custody but while they were still outside the apartment, Abdul approached the Deputies and told them that his two brothers had threatened him and punched him multiple times in the jaw, back of the head, face, arm, back, and stomach, and continued to hit him as he left the building.[36] The Deputies called for medical personnel to return and evaluate Abdul's injuries, and after both younger brothers admitted to punching Abdul, they were charged with family assault and sent to the Harris County Juvenile Detention Center.[37]

The day after Plaintiff's arrest, the magistrate found that probable cause did not exist and ordered Plaintiff to be released from custody, and the charge of resisting arrest was dismissed.[38] After Deputy Flores spoke with the Harris County District Attorney's Office again, Plaintiff was charged with interference with public duties for "pushing O. Flores' arm away," and with family assault.[39]   A magistrate found probable cause for the interference with public duties charge, but the State later dismissed the criminal action.[40]

---

[36] Document No. 31, ex. 1 ¶ 21; id., ex. 2 ¶ 11.

[37] Id., ex. 2 ¶¶ 12-14.

[38] Id., ex. 1 ¶ 26; Document No. 38, ex. 1 ¶ 41; id., exs. 10-11.

[39] Document No. 31, ex. 1 ¶ 26; Document No. 32, ex. 5 at 15 of 324; Document No. 38, ex. 1 ¶ 42; id., ex. 12.

[40] Document No. 31, ex. 4 at 1 of 44, 43 of 44.

Plaintiff filed suit against the Deputies and Defendants Sheriff Ed Gonzalez in his individual capacity ("Sheriff Gonzalez") and Harris County (the "County"), alleging the following claims under 42 U.S.C. § 1983: (1) against Deputy Flores, excessive force; (2) against Deputy Herrin, excessive force; (3) against the Deputies, false arrest; (4) against Sheriff Gonzalez and the County, failure to train; (5) against all four Defendants, malicious prosecution; (6) against the Deputies, conspiracy to subject Plaintiff to false arrest; and (7) against all Defendants, conspiracy to subject Plaintiff to malicious prosecution.[41] Defendants move for summary judgment.[42]

## II. Evidentiary Objections

Defendants object to and move to strike various arguments and evidence offered by Plaintiff, to which objections Plaintiff filed no response.[43]

Sheriff Gonzalez's objections to Plaintiff's argument that Sheriff Gonzalez may be liable based on either his failure to intervene or his failure to discipline the Deputies are SUSTAINED inasmuch as Plaintiff has not alleged any claim against Sheriff Gonzalez for which these alleged failures provide a possible basis

---

[41] Document No. 1 (Compl.).

[42] Document Nos. 31-33.

[43] Document Nos. 43, 46, 49.

10

for liability.[44]  Moreover, even if Plaintiff had so pled, Defendant could not be liable under either theory because he was not present at Plaintiff's arrest, *see* <u>Whitley v. Hanna</u>, 726 F.3d 631, 646 (5th Cir. 2013) (bystander liability "will not attach where an officer is not present at the scene of the constitutional violation"), and because any failure to discipline the Deputies *after* Plaintiff was tased and arrested could not have caused Plaintiff's injury. Sheriff Gonzalez has not, however, identified any evidence to which he objects on this basis, nor has he cited to any authority requiring Plaintiff's briefing to be stricken.

Defendants' objections and motions to strike at Document Nos. 43, 46, and 49 are otherwise all without merit and are DENIED.

## II. <u>Legal Standard</u>

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated

---

[44] Document No. 46 at 2.

assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record."  Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.

## III. <u>Discussion</u>

A.   Individual Defendants--Qualified Immunity

The Deputies and Sheriff Gonzalez each assert qualified immunity as to all of Plaintiff's claims against them. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982)). On summary judgment, once a defendant invokes qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." <u>Brown v. Callahan</u>, 623 F.3d 249, 253 (5th Cir. 2010). "[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." <u>Morgan v. Swanson</u>, 659 F.3d 359, 371 (5th Cir. 2011) (<i>en banc</i>) (citing <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011)) (internal quotation marks omitted). Courts have discretion to decide which of the two prongs of the qualified immunity analysis should be

13

addressed first in light of the circumstances in the particular case at hand.  <u>Pearson</u>, 129 S. Ct. at 818.

1.   Count One:  Excessive Force by Deputy Flores

Plaintiff alleges that Deputy Flores used unreasonable and excessive force in violation of the Fourth Amendment both times he tased Plaintiff.[45]   To prevail on an excessive force claim, a plaintiff must show (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.  <u>Darden v. City of Fort Worth</u>, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S. Ct. 69 (2018).[46]   Inquiries regarding whether a use of force was clearly excessive or clearly unreasonable are often intertwined and may be considered together.  <u>Id.</u> at 728.  It is undisputed that Plaintiff was injured when Deputy Flores tased him,[47] so the Court's inquiry is limited to whether the two tasings were clearly excessive and clearly unreasonable.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a

---

[45] Document No. 1 ¶¶ 59-71.

[46] Plaintiff cites throughout his briefing to <u>Darden v. City of Fort Worth</u>, 866 F.3d 698 (5th Cir. 2017).  That opinion was withdrawn and superseded by the above-cited decision.

[47] *See* <u>Tarver v. City of Edna</u>, 410 F.3d 745, 752 (5th Cir. 2005) (excessive force claim does not require "significant injury" but injury must be more than *de minimis*).

careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 109 S. Ct. 1865, 1871 (1989) (citation omitted). The reasonableness test "is not capable of precise definition or mechanical application," but "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> at 1872 (citations omitted); *see also* <u>Darden</u>, 880 F.3d at 728 ("Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'") (citations omitted).

Whether a particular use of force is reasonable must be judged from the perspective of a reasonable officer on the scene, but the inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham</u>, 109 S. Ct. at 1872 (citations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain,

and rapidly evolving--about the amount of force that is necessary in a particular situation." Id.

Deputy Flores argues that Plaintiff's resistance made Deputy Flores's repeated use of a Taser reasonable, but Plaintiff presents competent summary judgment evidence that he did not resist any lawful order by the Deputies, that he remained calm and did not threaten the Deputies verbally or physically, that he was inside of his own home, unarmed, not a flight risk, and that his sole act of "resistance" was reactive in pulling back his arm when Deputy Flores suddenly grabbed him from behind without warning.[48] Additionally, Deputy Flores admits that he did not give Plaintiff a verbal warning before tasing him,[49] which appears to violate the Harris County Sheriff's Office's policy on use of Tasers.[50] Cf. Darden, 880 F.3d at 732 ("While we certainly do not suggest that the violation of police department policies is sufficient to make out a constitutional violation, we have found their existence and

---

[48] There is a fact issue as to whether Plaintiff actively resisted being handcuffed while he was on the ground after the first tasing or whether Deputy Herrin had trouble handcuffing him merely because of the breadth of his shoulders and the effects of the first tasing. On summary judgment, this fact issue is resolved in favor of Plaintiff. Moreover, any resistance that may have occurred *after* the first tasing is irrelevant to the reasonableness of the first tasing.

[49] Document No. 38, ex. 4 at 13.

[50] *See* Document No. 32, ex. 5 at 156 of 324 ("Before using the TASER, the deputy shall, if practical, verbally warn the subject that the TASER will be deployed if the subject does not cease his or her combative behavior and comply with the deputy's commands.").

16

corresponding notice to officers relevant in analyzing the reasonableness of a particular use of force under the totality of the circumstances.") (citing <u>Gutierrez v. City of San Antonio</u>, 139 F.3d 441, 448-49 (5th Cir. 1998)).

Deputy Flores argues that he did not know whether Plaintiff might have weapons in his house or whether Plaintiff's two sons might possibly come to his aid, but Deputy Flores produces no evidence suggesting that he had objective reasons to fear either occurrence nor does he cite any legal authority permitting officers to tase suspects merely because they are in their homes and therefore might have access to unknown weapons or because their children are watching and could conceivably intervene. Deputy Flores also emphasizes the severity of the crime of family violence, of which Plaintiff was suspected. There is no evidence that the Deputies believed Abdul had been injured when Plaintiff allegedly pushed him against a wall, but even assuming that the severity of the crime weighs in favor of the Deputies, that factor alone is insufficient to establish that the tasing of Plaintiff was reasonable. *See* <u>Darden</u>, 880 F.3d at 729 (finding that the severity of the suspected crime--dealing drugs--weighed in favor of officers but that officers still were not entitled to qualified immunity on excessive force claim); <u>Cooper v. Brown</u>, 844 F.3d 517, 522 (5th Cir. 2016) (affirming denial of qualified immunity on excessive force claim despite "serious offense"). Moreover, while the

Deputies emphasize their responsibility to protect any victim of family violence, they have not produced any summary judgment evidence to suggest that Plaintiff posed a threat to any of his sons while he was standing in his doorway talking (calmly, according to Plaintiff's evidence) with the Deputies, so as to require tasing him for his sons' protection.  And although the Deputies may have been frustrated by Plaintiff's delay in answering the door while he completed his prayers and by his refusal to describe what had transpired or to produce written identification, they do not argue that Plaintiff violated any law by not cooperating more fully with their investigation.   Taking Plaintiff's evidence as true and making all justifiable inferences in his favor, <u>Anderson</u>, 106 S. Ct. at 2513, a reasonable jury could find that Deputy Flores's use of force in tasing Plaintiff twice was clearly excessive and clearly unreasonable.  Accordingly, genuine issues of material fact exist as to whether Deputy Flores violated Plaintiff's Fourth Amendment rights.

Turning to the second prong of the qualified immunity analysis, genuine issues of material fact exist as to whether Deputy Flores violated Plaintiff's clearly established rights.  The Fifth Circuit recently reversed summary judgment based on qualified immunity for an officer who tased a suspect twice where the jury could have found that the suspect was not actively resisting arrest:

18

> We have previously suggested that a constitutional
> violation occurs when an officer tases, strikes, or
> violently slams an arrestee who is not actively resisting
> arrest. *See* [Ramirez v. Martinez, 716 F.3d 369, 377-78
> (5th Cir. 2013)]; [Newman v. Guedry, 703 F.3d 757, 762-63
> (5th Cir. 2012)]; Bush v. Strain, 513 F.3d 492, 501 (5th
> Cir. 2008). Thus, if a jury finds that Darden was not
> actively resisting arrest, then a jury could likewise
> conclude that Officer Snow used excessive force by
> throwing Darden to the ground and tasing him twice. The
> facts the plaintiff has alleged therefore make out a
> violation of a constitutional right.
>
> Furthermore, the right at issue was clearly established
> at the time of Officer Snow's alleged misconduct. Our
> case law makes clear that when an arrestee is not
> actively resisting arrest the degree of force an officer
> can employ is reduced. *See* [Cooper v. Brown, 844 F.3d
> 517, 524 (5th Cir. 2016)]; Newman, 703 F.3d at 763; Bush,
> 513 F.3d at 502; *see also* Graham, 109 S. Ct. 1865
> (including whether an arrestee "is actively resisting
> arrest" among factors to consider in determining whether
> a particular use of force is unreasonable). . . . [I]n
> Newman we found that it was objectively unreasonable for
> officers to tase and strike an arrestee with a nightstick
> without resorting to less violent means when the
> arrestee's "behavior did not rise to the level of 'active
> resistance.'" 703 F.3d at 763.

Darden, 880 F.3d at 731-32.[51] *See also* Ramirez, 716 F.3d at 377-79

(accepting plaintiff's summary judgment evidence as true, officer

violated clearly established law when he tased plaintiff whose only

act of resistence was pulling his arm out of the officer's grasp);

Newman, 703 F.3d at 763 (viewing summary judgment evidence in the

light most favorable to plaintiff, use of Taser was objectively

---

[51] Darden was decided after Plaintiff's arrest in January 2017, and therefore is not itself part of the clearly established law at the time of Plaintiff's arrest, but Darden holds that the unconstitutionality of tasing in circumstances such as these was clearly established by 2013--well before the events in this case.

unreasonable where plaintiff was never given any verbal commands he did not obey and did not attempt to strike officers); <u>Autin v. City of Baytown</u>, 174 F. App'x 183, 185 (5th Cir. 2005) (affirming denial of summary judgment based on qualified immunity where "[n]ot only was Autin not resisting arrest, but Aldred's tasing of her was allegedly the first indication he gave to her that she was doing anything wrong.  He tased her when her back was to him, he gave her no notice of his intention to do so, and he continued to tase her repeatedly, even after she was subdued on the ground.").  Thus, the clearly established law precluded a reasonable officer from believing he could lawfully tase Plaintiff, without warning, after Plaintiff reactively pulled his arm back when it was grabbed from behind him without warning, and Plaintiff did not actively resist the Deputies, disobey any lawful order, or threaten the Deputies or anyone else.  Because the summary judgment evidence would permit a jury to find that these were precisely the circumstances under which Deputy Flores tased Plaintiff, Deputy Flores is not entitled to summary judgment on Plaintiff's excessive force claim.

2.   Count Two:  Excessive Force by Deputy Herrin

Plaintiff alleges that Deputy Herrin violated Plaintiff's Fourth Amendment right to be free from excessive force by directing Deputy Flores successively to tase Plaintiff twice.[52]  There is a

---

[52] Document No. 1 ¶¶ 72-86.

fact issue on whether Deputy Herrin told Deputy Flores to tase Plaintiff the first time, although she concedes that she "yelled to Deputy Flores to tase" Plaintiff the second time because she was unable to handcuff him.[53]  The Deputies produce evidence that Deputy Herrin has no authority to order Deputy Flores to deploy his Taser and that Deputy Flores made the decision to use his Taser based on his own assessment of the situation and not following any directions from Deputy Herrin.[54]   However, lack of authority to control another officer does not preclude liability under § 1983 for an officer who observes the other officer's use of excessive force and acquiesces in it.  Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.") (collecting cases and holding that evidence that officer yelled encouragement to officer beating plaintiff raised fact issue as to acquiescence in use of excessive force); Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (officer may be liable under § 1983 where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

---

[53] Document No. 31, ex. 2 ¶ 9; Document No. 38, ex. 1 ¶ 25; id., ex. 5 at 12.

[54] Document No. 31, ex. 1 ¶ 17; id., ex. 2 ¶ 9.

reasonable opportunity to prevent the harm; and (3) chooses not to act).

As discussed above, viewing the evidence in the light most favorable to Plaintiff, Deputy Flores violated clearly established law by tasing Plaintiff twice without warning when Plaintiff had not disobeyed any lawful order, threatened the Deputies, or resisted other than by pulling his arm away. It is uncontroverted that Deputy Herrin was present and observed all the relevant circumstances, and that she told Deputy Flores to use his Taser at least one time. Accordingly, a reasonable jury could find that Deputy Herrin acquiesced in Deputy Flores's objectively unreasonable and unconstitutional use of force so as to be liable under § 1983. Deputy Herrin is not entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim.

3.   Count Three:  False Arrest by the Deputies

Plaintiff alleges that the Deputies falsely arrested Plaintiff without a warrant and without probable cause in violation of the Fourth and Fourteenth Amendments.[55] The Deputies argue, *inter alia*, that they are entitled to summary judgment because a county magistrate found that probable cause had existed to arrest Plaintiff for "pushing O. Flores's arm away" and thereby

---

[55] Document No. 1 ¶¶ 87-92.

22

interfering with an officer's public duties.[56]   As the Deputies
correctly argue, under the "independent intermediary doctrine," a
finding by an independent intermediary such as a magistrate or
grand jury that the relevant facts give rise to probable cause
defeats a claim for false arrest against the initiating party by
breaking the chain of causation.   Cuadra v. Houston Indep. Sch.
Dist., 626 F.3d 808, 813 (5th Cir. 2010).   The Fifth Circuit has
"applied this rule even if the independent intermediary's action
occurred after the arrest, and even if the arrestee was never
convicted of any crime."   Buehler v. City of Austin/Austin Police
Dep't, 824 F.3d 548, 554 (5th Cir. 2016) (citations omitted), cert.
denied, 137 S. Ct. 1579 (2017).[57]   Moreover, it makes no difference
that the crime for which a magistrate found probable cause--
interference with public duties--was different from the crime which
Deputy Flores believed Plaintiff has committed--resisting arrest--
because "an arresting officer's state of mind (except for the facts
that he knows) is irrelevant to the existence of probable

---

[56] Document No. 31, ex. 4 at 1 of 44.

[57] An exception to the independent intermediary doctrine exists
when the law enforcement officer maliciously withholds relevant
information or misdirects the independent intermediary so as to
taint his or her finding of probable cause.   Buehler, 824 F.3d at
554.   Plaintiff argues that "[u]pon learning the first charge was
dismissed, Flores fabricated a new recollection of facts" leading
to the second charge, Document No. 38 at 21, but Plaintiff produces
no evidence that Deputy Flores withheld relevant information or
purposefully misdirected the magistrate.   See Buehler, 824 F.3d at
555 ("[M]ere allegations of 'taint,' without more, are insufficient
to overcome summary judgment.") (quoting Cuadra, 626 F.3d at 813).

cause. . . . [H]is subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 125 S. Ct. 588, 593-94 (2004) (citations omitted).

Plaintiff responds that the Fifth Circuit's independent intermediary doctrine is inconsistent with Malley v. Briggs, 106 S. Ct. 1092 (1986), and with the "overwhelming circuit consensus."[58] The Fifth Circuit has reaffirmed its doctrine multiple times since Malley and just two years ago rejected an argument that the independent intermediary doctrine should be overruled, holding that notwithstanding "other circuits' decisions in varying degrees of tension" with the doctrine, the Fifth Circuit "has consistently applied the doctrine in published opinions." Buehler, 824 F.3d at 554. This Court is bound by the Fifth Circuit's consistent published decisions upholding the independent intermediary doctrine. Under that doctrine, because a magistrate found that the Deputies had probable cause to arrest Plaintiff for interfering with public duties, the Deputies are entitled to summary judgment on Plaintiff's false arrest claim.[59]

---

[58] Document No. 38 at 22.

[59] Although the parties do not discuss this, the Deputies also could have reasonably believed based on controlling Fifth Circuit precedent that they had probable cause to arrest Plaintiff for resisting arrest after Plaintiff pulled his arm away from Deputy Flores's grasp, even though the magistrate later found there was no probable cause for that charge. See Ramirez, 716 F.3d at 376 ("[U]nder Texas law Deputy Martinez could have reasonably concluded

4.   Count Four:   Failure to Train by Sheriff Gonzalez

Plaintiff alleges that Sheriff Gonzalez and the County failed adequately to train and supervise the Deputies, in deliberate indifference to Plaintiff's right to be free from excessive force and unreasonable seizures.[60] As part of his claim for "failure to train," Plaintiff also alleges that the County's use of force policy in effect on the date of Plaintiff's arrest failed to provide for (1) proper use of a Taser, (2) proper use of force during investigatory detentions, and (3) the proper method for implementing investigatory detentions, which the parties appear to treat as a facial challenge to the constitutionality of the County's policy rather than a claim for failure to train.[61]

"Section 1983 does not create vicarious or *respondeat superior* liability." Evett v. DETNTFF, 330 F.3d 681, 689 (5th Cir. 2003) (citations omitted).  To establish that a supervisor is liable for a constitutional violation, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the

---

that Ramirez committed the offense of resisting arrest when Ramirez pulled his arm away from Deputy Martinez's grasp.").  At the very least, in light of Ramirez, the Deputies did not violate clearly established law by arresting Plaintiff, and they are alternatively entitled to qualified immunity on that basis.

[60] Document No. 1 ¶¶ 93-104.

[61] Id. ¶ 98.

25

supervisor's conduct and the constitutional violation." Id. (citations omitted). To hold a supervisory official liable for failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911–12 (5th Cir. 1998) (citing Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. at 912 (citing Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994); Wilson v. Seiter, 111 S. Ct. 2321 (1991)).

Sheriff Gonzalez moves for summary judgment, arguing that he had no personal involvement in Plaintiff's tasing, arrest, or prosecution and was not deliberately indifferent to Plaintiff's rights. The uncontroverted summary judgment evidence is that Sheriff Gonzalez, who took office as the Harris County Sheriff six days before Plaintiff's arrest, was not present at the scene of the arrest; has no personal knowledge of the events involving Plaintiff; had no personal involvement in Plaintiff's tasing or arrest, the decision to prosecute Plaintiff, or the subsequent

investigation of the incident by Sheriff's Office personnel; and was unaware of any problem with the Deputies' training or supervision.[62] The uncontroverted evidence further establishes that Deputy Flores and Deputy Herrin were licensed peace officers who had been licensed by the State of Texas after being trained under state standards set by the Texas Commission on Law Enforcement, which included training on lawful use of force and lawful arrest, and that the Deputies received additional training on policies and procedures of the Harris County Sheriff's Office, which policies and procedures have been approved by the Texas Commission for Accreditation of Law Enforcement Agencies.[63] See Benavides v. Cty. of Wilson, 955 F.2d 968, 973 (5th Cir. 1992) (where deputy's training complied with requirements of Texas law, plaintiff to survive summary judgment on failure to train claim must show "that this legal minimum of training was inadequate to enable the deputies to deal with 'usual and recurring situations' faced by jailers and peace officers").

Plaintiff advances several arguments that Sheriff Gonzalez is liable based on a variety of legal theories, but none is supported by any evidence that Sheriff Gonzalez had personal involvement in Plaintiff's tasing, arrest, or prosecution, or that Sheriff Gonzalez was "aware of facts from which the inference could be

---

[62] Document No. 32, ex. 1 ¶¶ 3, 5, 11-14.

[63] Id., ex. 1 ¶¶ 6-9; id., ex. 2 ¶ 2; id., ex. 3 ¶ 2.

drawn that a substantial risk of serious harm exists" or in fact drew such an inference, so as to be deliberately indifferent to Plaintiff's rights.[64]  Brenoettsy, 158 F.3d at 912.  Even assuming *arguendo* that the County's policies or the Deputies' training on use of force and investigatory detentions were insufficient to provide necessary guidance to the Deputies, Plaintiff produces no evidence that Sheriff Gonzalez was aware of any such deficiency in the County's policies or in the Deputies' training, much less that he was deliberately indifferent to such a deficiency.[65]  *See* Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) ("Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference."); Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a

---

[64] Plaintiff argues that the Deputies' actions violated the County's policies and training materials but simultaneously argues that those policies and materials did not adequately instruct the Deputies not to tase Plaintiff.  To the extent that Plaintiff argues that Sheriff Gonzalez is liable for giving the Deputies training materials that they did not follow, such facts, if true, would provide no basis for concluding that Sheriff Gonzalez caused any harm to Plaintiff.

[65] For the reasons discussed in Section III.B, *infra*, Plaintiff has not raised a genuine issue of material fact that the County's policies were facially unconstitutional or that the Deputies' training was constitutionally deficient, but the absence of any evidence of deliberate indifference by Sheriff Gonzalez entitles him to qualified immunity even if Plaintiff did raise a fact issue as to the sufficiency of the County's policies or training.

training program that will cause violations of constitutional
rights.").

Plaintiff relies on statistics indicating that in 2016, the
Office of Inspector General reported 270 investigations for
"Violation of Policy" and 223 investigations for "Use of Force,"[66]
but cites to no evidence that any of these investigations were
completed with findings that deputies had engaged in misconduct
or misused their Tasers or falsely arrested suspects under
circumstances similar to those at issue here, such as to put
Sheriff Gonzalez on notice of a deficiency in the County's training
or supervision of its deputies. Indeed, Plaintiff produces
evidence that "Harris County is not aware of any case in which it
has been determined that one of its deputy sheriffs used excessive
force by use of the Taser."[67]   Plaintiff also relies on three
previous use of force reports involving Deputy Flores and Deputy
Herrin, but there is no evidence that Sheriff Gonzalez, who oversaw
approximately 4,500 employees, was aware of those reports during
his first week in office. In any event, the reports do not
indicate that any constitutional violations occurred, much less
that the Deputies were substantially certain to violate Plaintiff's
constitutional rights or that Sheriff Gonzalez actually drew the

---

[66] Document No. 40, ex. 22 at 6.

[67] Id., ex. 14 at 10 (County's response to requests for
production).

inference that a substantial risk of a constitutional violation existed, as is required to establish deliberate indifference.[68]

Accordingly, because Plaintiff has produced no summary judgment evidence that Sheriff Gonzalez was involved in his tasing, arrest, or prosecution, or that Sheriff Gonzalez was deliberately indifferent to any deficiencies in the County's policies or its training or supervision of its deputies, Sheriff Gonzalez is entitled to summary judgment on Plaintiff's failure to train claim.

     5.    Count Five:  Malicious Prosecution by the Deputies and Sheriff Gonzalez

Plaintiff alleges that Defendants maliciously prosecuted him for resisting arrest, causing him to be incarcerated overnight before being released when the magistrate found that there was no probable cause.[69]  As Defendants correctly argue, the Fifth Circuit

---

[68] *See* id., ex. 19 (report involving Deputy Flores's use of his Taser in October 2015, which was found to be reasonable upon review); id., ex. 20 (report involving Deputy Herrin's use of open hand force in October 2016, which was found to be reasonable upon review); id., ex. 21 (report involving Deputy Flores's January 2016 use of a Taser following a chase by car and on foot, with no investigation history included).  Under Harris County Sheriff's Office Department Policy 501, deputies must report all uses of force and the Office of Inspector General documents and reviews all incidents where force has been used.  Document No. 32, ex. 5 at 137 of 324 to 139 of 324.  Thus, the mere existence of a report is not evidence of wrongdoing.  None of the reports on which Plaintiff relies describes facts indicating a constitutional violation.

[69] Document No. 1 ¶¶ 105-119.

30

held in <u>Castellano v. Fragozo</u>, 352 F.3d 939, 945 (5th Cir. 2003)

(*en banc*), that there is no freestanding constitutional right to be

free from malicious prosecution.   After recognizing widespread

confusion in courts' treatment of claims for malicious prosecution

under § 1983, the *en banc* court concluded:

> [C]ausing charges to be filed without probable cause will
> not without more violate the Constitution.  So defined,
> the assertion of malicious prosecution states no
> constitutional claim.  It is equally apparent that
> additional government acts that may attend the initiation
> of a criminal charge could give rise to claims of
> constitutional deprivation.
>
> The initiation of criminal charges without probable cause
> may set in force events that run afoul of explicit
> constitutional protection--the Fourth Amendment if the
> accused is seized and arrested, for example, or other
> constitutionally secured rights if a case is further
> pursued.  Such claims of lost constitutional rights are
> for violation of rights locatable in constitutional text,
> and some such claims may be made under 42 U.S.C. § 1983.
> Regardless, they are not claims for malicious prosecution
> and labeling them as such only invites confusion.

352 F.3d at 953-54.   Because there is no freestanding

constitutional right to be free from malicious prosecution, courts

"must insist on clarity in the identity of the constitutional

violations asserted."  <u>Id.</u> at 945.

Count Five attempts to allege a freestanding claim for

"malicious prosecution."   The only specific constitutional

violation alleged in Count Five is that Plaintiff's incarceration

on January 7-8, 2017 violated the right to be free from unlawful

seizure under the Fourth and Fourteenth Amendments, apparently based on the alleged lack of probable cause to detain Plaintiff. *See* Manuel v. City of Joliet, 137 S. Ct. 911, 918 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."). However, as discussed above, a magistrate found that probable cause existed to arrest Plaintiff, such that Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment false arrest claim. Reasserting the same allegations under the guise of a freestanding "malicious prosecution" claim, which is foreclosed by Fifth Circuit precedent, does not cure its deficiencies. *See* Cuadra, 626 F.3d at 812 (affirming summary judgment where "[t]o the extent that Cuadra alleges that the Appellees violated his constitutional rights by engaging in malicious prosecution, that argument is foreclosed by our decision in [Castellano]").[70] Even if Plaintiff could identify a legal basis for his malicious prosecution claim, such a claim was not clearly established in the law so as to overcome the Deputies'

---

[70] Furthermore, the summary judgment evidence is uncontroverted that Deputy Herrin and Sheriff Gonzalez had no involvement in the initiation of criminal charges against Plaintiff for resisting arrest, and Deputy Flores only briefed the Harris County District Attorney's Office, which made the decision to pursue charges. Document No. 31, ex. 1 ¶ 19; id., ex. 2 ¶ 17; Document No. 32, ex. 1 ¶ 5.

32

qualified immunity.[71]   Accordingly, Defendants are entitled to summary judgment on Count Five.

      6.    Count Six:  Conspiracy by the Deputies to Subject Plaintiff to False Arrest

Plaintiff conclusorily alleges that the Deputies conspired with each other to deprive Plaintiff of his liberty and subject him to false arrest in violation of § 1983.[72]  "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'"  Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995) (citation omitted).

---

[71]  Plaintiff makes a conclusory argument that his constitutional right to be free from malicious prosecution "is clearly established from the Due Process Clause."  Document No. 38 at 24; Document No. 39 at 21; Document No. 40 at 19.  The only authority Plaintiff cites for this proposition is a dissent in City of Joliet.  See City of Joliet, 137 S. Ct. at 923 (Alito, J., dissenting, joined by Thomas, J.) ("I would . . . hold that the Fourth Amendment cannot house [a claim for malicious prosecution]. If a malicious prosecution claim may be brought under the Constitution, it must find some other home, presumably the Due Process Clause.").  This opinion does not constitute clearly established law necessary to overcome Defendants' assertion of qualified immunity because (1) it represents only the dissenting view of two Justices, (2) it suggests no more than a conditional Due Process Clause possibility, not a declaration of established law, and (3) it was not written and issued until March 2017, after the incident at issue here.

[72] Document No. 1 ¶¶ 120-22.

33

Because the summary judgment evidence establishes that Plaintiff's Fourth Amendment false arrest claim fails as a matter of law, Plaintiff's conspiracy claim based on that alleged violation likewise fails, and the Deputies are entitled to summary judgment on Count Six.  *See* id. at 921 ("[A]ll officers alleged to have violated Hale's First Amendment rights are entitled to qualified immunity.  Therefore, the conspiracy claim is not actionable.").

      7.    Count Seven:  Conspiracy by the Deputies and Sheriff Gonzalez to Subject Plaintiff to Malicious Prosecution

Plaintiff alleges that all Defendants conspired to subject him to malicious prosecution in violation of § 1983.[73]  As with Count Six, because Defendants are entitled to summary judgment on Plaintiff's underlying claim for malicious prosecution, they are also entitled to summary judgment on his claim for conspiracy to commit that alleged violation.  Hale, 45 F.3d at 920.

B.   County Liability

Plaintiff's claims against the County in Counts Five and Seven for malicious prosecution and conspiracy to subject Plaintiff to malicious prosecution fail for the reasons discussed above, and the County is entitled to summary judgment on those claims.  Plaintiff also alleges against the County (and against Sheriff Gonzalez, as

---

[73] Id. ¶¶ 123-26.

discussed above) a claim in Count Four for failure to train and supervise the Deputies, in which he also challenges the constitutionality of the County's Use of Force policy.[74]

A municipality can be held liable under § 1983 only when the municipality itself causes a constitutional deprivation. *See* City of Canton v. Harris, 109 S. Ct. 1197, 1203 (1989); Monell v. Dept. of Soc. Servs., 98 S. Ct. 2018, 2037-38 (1978). This requires the execution of an official county policy or custom which results in the injury made the basis of the § 1983 claim. Monell, 98 S. Ct. at 2035-36. Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002). A "high standard of proof" is required for a municipality to be liable under § 1983. Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998); Board of County Com'rs v. Brown, 117 S. Ct. 1382, 1394 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.").

The only underlying constitutional violation as to which Plaintiff has raised a genuine issue of material fact is his

---

[74] Id. ¶¶ 93-104.

allegation that the Deputies used excessive force when Deputy Flores, with Deputy Herrin's encouragement, tased Plaintiff twice while he was not disobeying any lawful order, threatening the Deputies, or actively resisting arrest. Accordingly, to the extent Plaintiff alleges in Count Four a claim against the County for an unconstitutional policy or for failure to train or supervise the Deputies based on Plaintiff's alleged false arrest or malicious prosecution, the County is entitled to summary judgment thereon.

Focusing only on Plaintiff's arguments for the County's liability that arise from the Deputies' alleged excessive use of force, Plaintiff first argues that the tasing of Plaintiff was inconsistent with the County's Taser training materials, and that the County failed to discipline the Deputies for their violations.[75] If, as Plaintiff argues, the Deputies failed to comply with the County's training materials or policies, those materials and policies could not have been the moving force behind Plaintiff's injury so as to subject the County to liability. Moreover, any subsequent failure to discipline the Deputies for tasing Plaintiff could not have caused the already completed tasing so as to give rise to County liability.

Plaintiff next argues that the County's Use of Force policy is facially unconstitutional because it provides only a section titled "Force Used to Affect an Arrest or Search" but does not

---

[75] Document No. 39 at 8-11.

specifically address the amount of force that may be used for an investigatory detention.[76]   Plaintiff cites to no legal authority whatsoever in support of this argument.   Moreover, the County's Use of Force policy provides that force must be objectively reasonable and discusses the factors identified in <u>Graham v. Connor</u>, 109 S. Ct. 1865 (1989), for determining whether force is reasonable.[77]   The policy goes on to provide:

> Unreasonable force is force that is unnecessary or excessive given the totality of the circumstances presented to the deputy or detention officer at the time the force is applied.   Unreasonable force is prohibited. The use of unreasonable force will subject the deputy or detention officer applying such force to discipline and/or prosecution.[78]

The Use of Force policy elsewhere cautions that "a deputy or detention officer should always escalate the force employed to only that which is necessary to respond to the offender's actions."[79] Plaintiff presents no summary judgment evidence or authority suggesting that the County's Use of Force policy, which accurately describes the constitutional standard for reasonable use of force and prohibits use of unreasonable force, caused a violation of

---

[76] <u>Id.</u> at 14-16.

[77] Document No. 33, ex. 5 at 132 of 324 to 133 of 324.

[78] <u>Id.</u>, ex. 5 at 133 of 324.

[79] <u>Id.</u>, ex. 5 at 130 of 324.

Plaintiff's rights.  The County is therefore entitled to summary judgment on Plaintiff's policy-based claim.

Finally, Plaintiff argues that the County is liable for the unconstitutional tasings based on its failure to train and supervise the Deputies.  A claim under § 1983 that a municipality's failure to provide training to its employees resulted in the constitutional deprivation "can only yield liability against a municipality where that [municipality's] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants."  City of Canton, 109 S. Ct. at 1206.  Thus, to succeed on a failure to train claim against a municipality, a plaintiff must show (1) inadequate training procedures; (2) that inadequate training caused the constitutional violation; and (3) the deliberate indifference of municipal policymakers. Pineda, 291 F.3d at 332.

Although Plaintiff argues that the Deputies committed multiple constitutional violations on January 7, 2017, he produces no evidence that Plaintiff's training was inadequate, that the violations resulted from inadequate training, or that Sheriff Gonzalez or any other County policymaker was deliberately indifferent to the risk that inadequate training would lead to the unconstitutional tasing of Plaintiff or others like him.  Plaintiff himself produces and cites to extensive and detailed training

materials involving the proper use of Tasers produced by the County.[80]  Moreover, the County has a policy of hiring only deputy sheriffs who have completed all state-mandated training and have passed the state-mandated examination to become a licensed Texas Peace Officer, and consistent with that policy, Deputy Flores and Deputy Herrin were both licensed peace officers who had completed extensive law enforcement training.[81]  Deputy Flores completed an eight hour Taser training and was certified in the use of the Taser, and had also previously been certified in the use of a Taser in Kansas.[82]  Finally, as discussed above in Section III.A.4, the evidence on which Plaintiff relies as proof that the County was aware of a continuing pattern of similar violations--namely, the Office of Investigator General statistics on investigations and the three prior use of force reports involving the Deputies--does not establish that Deputy Flores, Deputy Herrin, or any other employee of the Harris County Sheriff's Office had unreasonably used his or her Taser in violation of the Constitution so as to support a finding that the County's policymaker was deliberately indifferent

---

[80] Document No. 39 at 5-6; id., ex. 18 (225-page presentation on use of Tasers).

[81] Document No. 31, ex. 1 ¶ 2 and 10 of 14 to 14 of 14; id., ex. 2 ¶ 2 and 5 of 11 to 11 of 11; Document No. 33, ex. 3 ¶¶ 6, 9.

[82] Document No. 31, ex. 1 ¶ 2.  Deputy Herrin was also certified in the use of a Taser.  Id., ex. 2 ¶ 16.

to the risk of further constitutional violations.  Accordingly, the County is entitled to summary judgment on Plaintiff's claim for failure to train.

## IV. <u>Order</u>

For the reasons set forth above, it is hereby

ORDERED that Defendants Oscar Flores and Megan Herrin's Motion for Summary Judgment (Document No. 31) is GRANTED IN PART as to Plaintiff's claims against Defendants Oscar Flores and Megan Herrin for false arrest (Count Three), malicious prosecution (Count Five), conspiracy to subject Plaintiff to false arrest (Count Six), and conspiracy to subject Plaintiff to malicious prosecution (Count Seven), and those claims are DISMISSED with prejudice on the merits.  The motion is DENIED as to Plaintiff's excessive force claims against Defendants Oscar Flores (Count One) and Megan Herrin (Count Two), and those claims remain for trial.  It is further

ORDERED that Defendant Harris County Sheriff Ed Gonzalez's Motion for Summary Judgment (Document No. 32) and Defendant Harris County's Motion for Summary Judgment (Document No. 33) are both GRANTED and Plaintiff's claims against Defendant Sheriff Ed

Gonzalez in his individual capacity and Defendant Harris County are DISMISSED on the merits with prejudice.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 19TH day of December, 2018.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

41